Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

1

## UNITED STATES DISTRICT AND BANKRUPTCY COURTS
## FOR THE DISTRICT OF COLUMBIA

KARIN LEFFER
registered address
Rodacher Str. 84a, D-96450 Coburg, Germany
at the moment because of political persecution
in Switzerland:
Karin Leffer
c/o Dietmar Morscher,
Rheinecker Str. 8
CH-9425 Thal, Switzerland
Email: karinleffer@gmail.com

and

BEOWULF VON PRINCE
Äusseres Holz 479
CH-9427 Wolfhalden, Switzerland
Email: prince.beowulf@outlook.de

Plaintiffs,

v.

FEDERAL REPUBLIC OF GERMANY
Wilhelmstraße 97, D-10117 Berlin, Germany
in third-party notice:
SWISS CONFEDERATION
Eidgenössisches Finanzdepartement,
Bundesgasse 3, CH-3003 Bern, Switzerland
EUROPEAN UNION
Generalsekretariat, B-1049 Brussels, Belgium
KINGDOM OF BELGIUM
Rue de la Loi 12, B-1000 Brussels, Belgium

Defendants

Case: 1:19-cv-03529
Assigned To : Nichols, Carl J.
Assign. Date : 12/9/2019
Description: Pro Se Gen. Civ. (F-DECK)

**COMPLAINT FOR DECLARATORY JUDGMENT, REIMBURSEMENT**

The Plaintiffs KARIN LEFFER and BEOWULF VON PRINCE, per se, claims the following against

the defendants:

### PREAMBLE

1. Pursuant to 28 U.S.C. § 2201, Mrs. Karin Leffer and Mr. Beowulf von Prince are seeking

   a declaratory judgment that jurisdiction in this matter rests with the courts of the United

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

2

States of America, with President Donald Trump as Commander-in-Chief, and is therefore

the final instance in the following action:

Complaint

Karin Leffer, as a representative of the German People within the meaning of Art. 116 of the Basic Law for the Federal Republic of Germany (GG), understood as occupation law, c/o Dietmar Morscher, CH-9425 Thal, Switzerland

and

Mr. Beowulf von Prince, as a civilian representative of the Allied occupying powers, in this case the United States of America as the main victorious power, Äusseres Holz 479, CH-9427 Wolfhalden, Switzerland

against

the Federal Republic of Germany, represented by the deputies of the Federal Republic of Germany, represented by the Minister of Finance, Mr. Olaf Scholz, Wilhelmstraße 97, D-10117 Berlin

and as

third-party notices

the Swiss Confederation, represented by the Minister of Finance, Mr. Ueli Maurer, Generalsekretariat EFD, Eidgenössisches Finanzdepartement, Bundesgasse 3, CH-3003 Bern

and

the European Union, represented by its President Mr. Jean-Claude Junker, Generalsekretariat, B-1049 Brussels, Belgium

and

the Kingdom of Belgium, represented by Deputy Prime Minister and Minister of Finance and Development Alexander De Croo, Rue de la Loi 12, B-1000 Brussels, Belgium

for violation of occupation law, in this instance the replacement of the lawful judges by unlawful, unauthorized extraordinary judges whose independence was withdrawn in application of the banned National Socialist law of the German Reich

and

associated provisions of peace treaties, in this instance political persecution due to being nationals of a state entitled to reparations

and

associated provisions of defense law (what is being defended?)

and/or the Basic Law for the Federal Republic of Germany

and

the resulting violations of the Torture Act.

## PARTIES; JURISDICTION, AND VENUE

2. Plaintiff Karin Leffer is German within the meaning of Art. 116 GG, (see recital 22) with

a registered address of Rodacher Str. 84a, D-96450 Coburg, Germany,

currently residing, however, in Switzerland, c/o Dietmar Morscher, CH-9425 Thal,

Switzerland, due to ongoing political persecution.

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

3

3. Plaintiff Mr. Beowulf von Prince, Äusseres Holz 479, CH-9427 Wolfhalden, Switzerland, due to his being a national of the Free State of the Free City of Danzig.

4. The defendant Federal Republic of Germany, represented by the deputies of the Federal Republic of Germany, represented by the Minister of Finance, Mr. Olaf Scholz, Wilhelmstraße 97, D-10117 Berlin.

5. In third-party notice against the Swiss Confederation, represented by the Minister of Finance, Mr. Ueli Maurer, Generalsekretariat EFD, Eidgenössisches Finanzdepartement, Bundesgasse 3, CH-3003 Bern.

6. In third-party notice against the European Union, represented by President Mr. Jean-Claude Junker (from Nov. 01, 2019 Ursula von der Leyen), Generalsekretariat, B-1049 Brussels, Belgium.

7. In third-party notice against the Kingdom of Belgium, represented by Deputy Prime Minister and Minister of Finance and Development Alexander De Croo, Rue de la Loi 12, B-1000 Brussels, Belgium.

8. By letter dated August 6, 2018 (received August 31, 2019 due to incorrect address on the envelope, see Annex No. 21), the Supreme Court stated that it has no jurisdiction until the matter has first been brought before a lower court. The plaintiffs hereby seek to bring this matter to the court.

## FACTUAL BACKGROUND

### A. Underlying Action

9. On July 09, 2013 the plaintiffs were served with indictments issued by the Coburg Regional Court, Bavaria, Germany, Case No. 1 KLs 123 Js 3979/11.

10. At that time, Mr. von Prince was being held in extradition custody in Kronach Prison, Festungsstr. 9, D-96317 Kronach, Germany.

11. The indictment was therefore issued in breach of Art. 14 of the European Convention on Extradition (Rule of Speciality) and under Swiss sovereignty (see Recital No. 105, 106).

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

4

12. The indictment refers to the plaintiffs as representatives of the Free State of the Free City of Danzig. On the basis of this indictment, the arrest warrant was issued against the plaintiff Mr. von Prince on September 19, 2013 and against the plaintiff Karin Leffer on September 15, 2014; said warrant listed him and the plaintiff as representatives of the Free State of the Free City of Danzig, whereby the court confirmed their status as such.

## B. Competence of the court/jurisdiction

13. The Federal Republic of Germany (FRG) is defined by the Basic Law for the Federal Republic of Germany (GG).

14. Art. 79 GG Law stipulates that the Basic Law cannot be amended insofar as it pertains to matters concerning **peace treaties, occupation law,** or defense law.

    The deputies of the FRG thus have no sovereign powers in these matters.

15. In violation of these peace treaties and occupation law, the courts of the Federal Republic of Germany do not hold jurisdiction on such matters, but instead jurisdiction rests with the courts of the Allies. The United States of America was confirmed as the main victor in London in 1944, giving the courts in the United States jurisdiction over matters relating to violations of peace treaty law, occupation law, and defense law.

16. **No change to these legal relationships until today.**

    That none of this has changed to date and that one simply forgot to delete or overwrite this Art. 79 GG can be seen in Art. 120 GG: *"The Federation shall finance the expenditures for* **occupation costs** *and other internal and external burdens resulting from the war."* In the last ten years alone, there have been six amendments to the Basic Law. However, this Art. 120 GG remains in force because no reparation issues, such as those laid down in the 1953 London Debt Agreement, have been resolved. The debtors cannot unilaterally cancel their debts.

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

5

The extent of the rights and obligations of the FRG are described in Art. 133: *"The Federation shall succeed to the rights and duties of the Administration of the Combined Economic Area."*

Evidence: official translation of the Basic Law for the Federal Republic of Germany: website of the Federal Office for Justice

https://www.gesetze-im-internet.de/englisch_gg/

17. In 1990, the 2+4 Treaty was intended to achieve a final settlement. This treaty was subject to two conditions.

    1. The recognition of the border between Poland and the FRG. This was regulated by the German-Polish Border Treaty.

    2. The obligation for the Germans to adopt a constitution in accordance with Art. 146 GG. This would have replaced the Basic Law, but has not yet happened. The Danzig nationals who renounced their right to German citizenship (see Recital Nos. 39-43) would have had to agree to this constitution, because it would have eliminated Danziger nationality.

    The provisions of the Basic Law concerning peace treaties, occupation law, and defense law thus remain fully in force. As a result, there has been no restriction to the rights and duties of the Allies, as confirmed by the Art. 4 of the 2nd Act to Adjust Federal Law of November 23, 2007 concerning adjusted occupation law, §2 Reintroduction of the repealed, not obsolete, Occupation Law, and §3 of the Rights and Duties of the Occupying Forces.

    The 2+4 Treaty was therefore never implemented and the validity of the German-Polish Border Treaty is therefore questionable.

18. There has been an utter breach of the duties imposed by the Allies; see the recitation of the facts.

6

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

## C. Concerning the parties to the dispute

### 1. Concerning the "German" parties to the dispute

There was a need to clarify who in the FRG is evading its duties and who is waiving its rights.

19. General

Civil law takes precedence over state law, otherwise no boxing fights could take place, for example.

State laws are general agreements and de facto the general terms and conditions of a contract.

International law involves treaties which nationals of different states have concluded with each other and therefore take precedence over national laws.

Private international law takes precedence over all other law.

20. States differ in their laws. A share in state assets is also linked to nationality. It can be passed on to one's heirs. Nationality can only be revoked on the basis of the relevant law defining such nationality. No other state can or may withdraw the nationality of a national of another state, cf. Convention Respecting the Laws and Customs of War on Land (Hague IV) of 1907.

21. Another nationality may be acquired only by those who wish to acquire it and may be obtained only with the consent of the other nationals.

22. "German" within the meaning of Art. 116 GG

Per Art. 116 GG, the Basic Law applies to Germans. Art. 116 groups together different nationals. A German passport is not and cannot serve as proof of nationality.

23. Being a "German" within the meaning of Art. 116 GG means that these persons may invoke German law. German law within the meaning of Art. 116 refers to the law of the Free City of Danzig, which was internationally defined as German law in the Constitution

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

7

of 1920. The Permanent International Court of Justice in The Hague is the supreme constitutional court on the interpretation of German law cf. Collection of Judgments, Orders and Advisory Opinions Series A/B No. 65. https://www.icj-cij.org/en/pcij-series-ab.

24. Occupation Law - Convention Respecting the Laws and Customs of War on Land of October 18, 1907 (Hague IV)

According to Art. 100 of the Treaty of Versailles, the German Reich renounces the territory of the Free City of Danzig in favor of the main victors of the First World War. With Art. 101, these states establish the sovereign state of the Free City of Danzig. In Art. 102, the League of Nations assumes the protection of the Free City of Danzig and, according to Art. 103, these states guarantee that the Constitution would be upheld. The supreme power over the Free City of Danzig is thus first incumbent upon the victorious powers of the First World War; cf. Collection of Judgments, Orders and Advisory Opinions Series A/B No. 65.

Evidence:    Internet archive of the International Court of Justice in The Hague

https://www.icj-cij.org/en/pcij-series-ab

25. World War II began with the bombardment of the territory of the Free City of Danzig by the German Reich on September 1, 1939 at 4:45 a.m.; cf. Indictment No. 1 of the Nuremberg War Crimes Trials.

The Convention Respecting the Laws and Customs of War on Land of October 18, 1907 (Hague IV) thus entered into force as a generally binding, supreme international law. It is valid until the conclusion of a peace treaty.

26. The German Reich forced the Danziger to accept German nationality and forced the male population into military service, thus enslaving them, finally declaring the unfortified city of Danzig a fortress and thus abolishing the protection according to Art. 25 Hague

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

8

IV. At the same time, however, the annihilation of the Danziger was ordered; cf. Indictment No. 2 of the Nuremberg War Crimes Trials. (Indictment No. 3 for crimes against humanity was added later).

27. The German Empire did not surrender when the enemy was already at the gates of Berlin, instead opting to defend the city in house-to-house-combat as Berlin became essentially a fortress. A fortress enjoys no protection whatsoever in war. What applies to the capital in war, applies to the whole country. The German Reich is therefore not only incapable of action because it can no longer form an independent government, but it has ceased to exist under international law. A fortress can and may be totally destroyed in war, together with all human life inside.

28. In the Nuremberg War Crimes Trials, the National Socialist law of the German Reich was confirmed as a criminal offense and banned by Control Council laws.

29. The promulgation of the Basic Law did not create a new state, but rather served as an instruction/self-commitment to comply with occupation law.

30. According to Art. 43 Hague IV, the occupier must uphold local law and public order.

31. Art. 43 Hague IV

If, as a result of war, the population of an occupied territory is expelled, the occupier must guarantee the territorial rights of the occupied persons on foreign territory to these expellees. It creates a personal status, a personal sovereignty. In this case, the local law of the Free City of Danzig, **here Art. 116 of the Danzig Constitution** must be respected. This right must also be respected without the application Hague IV, solely on the basis of Art. 103 of the Treaty of Versailles.

This guarantee was provided **in Art. 116 GG:** *"a German within the meaning of this Basic Law is a person who possesses German citizenship or who has been admitted to the*

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

*territory of the German Reich* **within the boundaries of 31 December 1937** *as a refugee or expellee of German ethnic origin."*

32. "German nationality" within the meaning of Art. 116 applies to those persons subject to German law within the meaning of Art. 116, that is, the Constitution of the Free City of Danzig.

33. Any refugees or expellees of German ethnicity in the territory of the German Reich as of December 31, 1937 are deemed nationals of the German Reich if they had this nationality at that time.

34. The Potsdam Agreement

According to the Potsdam Agreement, which is not an international treaty, but the order of the Allied military commanders, it is not the intention to enslave and annihilate the Germans (as they did with the Danziger). Instead, this agreement stipulates that the Germans will be first be educated to be good democrats. But then they must then create and endeavor to preserve their own democratic rule of law. It is made clear to the Germans that they alone are responsible for their actions.

35. The education of Germans to be good democrats took place as long as the Allies had direct responsibility. This continued for as long as Berlin remain was occupied. With the 2+4 Treaties, the Germans were solely responsible for compliance with Hague IV.

36. This constituted the completion of the education of the Germans to good democrats with the rule of law.

37. With the departure of the Allies from Berlin in 1994, Art. 23 GG was replaced with the European Union. At the same time, all state institutions began to be privatized. For instance, the Bavarian State Forestry Service became a limited liability company (GmbH).

38. In order to ensure that responsibility for compliance with Hague IV clearly lies with the Germans, Art. 25 GG (taking up Art. 25 Hague IV concerning an unfortified City of

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

10

Danzig): *"The general rules of international law shall be an integral part of federal law. They shall take precedence over the laws and directly create rights and duties for the inhabitants of the federal territory."*

39. <u>Law concerning the Renunciation of German Nationality imposed by the German Reich</u>

The Danziger are released from this obligation. They are subject to German law within the meaning of Art. 116 GG. Even if they violate it, they do not lose their status under German law.

40. In order to separate the responsibilities, the Law concerning the Renunciation of German Nationality imposed by the German Reich was passed February 22, 1955. The provisions of this law could only be used by those who had previously had been forced to accept German nationality of the German Reich, such as the nationals of the Free City of Danzig. Those who made use of it acquired the legal status/privilege of not becoming a representative of the FRG; cf. the electoral laws. Thus, under international law, the nationals of the Free City of Danzig definitively remain distinct from the nationals of the German Reich and have no responsibility for their actions.

Evidence No. 5: Electoral laws of FRG

Evidence No. 6: German passport not proof of nationality

41. <u>Possession of German nationality within the meaning of Art. 116 GG</u>

The father of Mr. Beowulf von Prince was born the son of a British settler in East Africa, was briefly in Danzig to acquire this international citizenship, and then went back to his home in the British League of Nations mandate of Tanganyika. After the outbreak of the Second World War, he was sent by the British to Germany, but, of course, not to enter the German Army and shoot at as many Britons as possible. According to the Danzig constitution, he was a civilian. Instead he was sent to Germany as a national of the Free City of Danzig and to engage in resistance as a member of the Allies. He fulfilled this

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

11

duty. He worked to disrupt German military operations and contributed significantly to the attempted assassination of Hitler under Count von Stauffenberg.

Evidence: Documents of the digital library of UN

https://digitallibrary.un.org/record/1656856?ln=en

42. After the war, he made explicit use of the Law concerning the Renunciation of German Nationality imposed by the German Reich and filed a claim for approx. 10 million shillings in damages with the United Nations in New York. He received 275,000 shillings as a partial payment of his claim from the British based on the London Debt Agreement.

Evidence: Documents of the digital library of UN

https://digitallibrary.un.org/search?ln=en&p=Tom+Adalbert+von+Prince&f=&c=Resource+Type&c=UN+Bodies&sf=&so=d&rg=50&fti=0

Evidence 2 and 3: Documents of the digital library of UN

43. He has retained his function as a civilian representative of the Allies, but he could not become a deputy of the FRG.

The same applies to Mr. Beowulf von Prince.

44. The option available to nationals of the German Reich

On the other hand, the nationals of the former German Reich have the opportunity to remain subject to or renounce the law of the Free City of Danzig based on their own unremitting efforts.

45. As early as 1950, §15 of the Act concerning the Constitution of the Courts (GVG) stating *"Courts are state courts"* was repealed.

46. It can therefore no longer be applied in the FRG. Even then the statutory provisions were rules/agreements on arbitration, effectively making the civil courts courts of arbitration.

47. Criminal courts are government authorities according to §11 of the German Criminal Code (StGB).

12

48. With the withdrawal of the Allies from Berlin, all state institutions were privatized, initially inconspicuously, starting with little-known authorities like the Bavarian State Forestry Office. In 2001, Bundesfinanzagentur GmbH was created using as a shell company an electric company founded in Berlin in 1990. All other state institutions, including the pension insurance fund, eventually following.

49. The laws governing the civil service (*Beamtengesetze*) were replaced with laws concerning civil servant status (*Beamtenstatusgesetze*).

50. <u>Distinctions among Germans within the meaning of the Basic Law</u>

The application of otherwise unchanged laws began to change in 2004.

At first, the judges appointed under law were replaced by unlawful, extraordinary judges in violation of Art. 101 GG and §16 GVG.

Evidence No.19:    Letter to the International Court of Justice in The Hague

Page 17 – 8.6.1 The total collapse of the democratic rule of law

51. This meant an end to compliance with the statutory provisions. For example, cases are now no longer decided by the Criminal Code (StGB) of the FRG, but according to §2 of the Criminal Code under the Nazi regime.

Evidence No. 19:    Letter to the International Court of Justice in The Hague

Page 4 – 2. The National Socialist legal position

Evidence: Judgment of the Permanent International Court of Justice in The Hague, 1935, Series A/B No. 35

52. Finally, it was announced on the official website of the Bavarian State Ministry of Justice, that the independence of the judges had been abolished in breach of Art. 97 GG and §92 StGB and any critics were threatened with death.

Evidence No. 8:    Printout of the official website of the Bavarian Ministry of

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

13

Justice

53. Then the plaintiffs, together with other Germans within the meaning of Art. 116, founded the Bund für das Recht in 2006 and published the book: "Do your duty: save your existence" in reference to the Potsdam Agreement.

54. Finally, Art. 4 of the 2nd Act to Adjust Federal Law of November 23, 2007 concerning the validity of adjusted occupation law resulted in the political reorganization of the sovereign state of the Free City of Danzig.

55. Meanwhile, the nationals of the German Reich represented by the deputies of the FRG accept this radical change in the application of law, even if contrary to the written law. This is a tacit consent, given calmly and indifferently, and establishes the changed application of the law to their rights.

56. The Nazis first seized power in the Coburg district of the Higher Regional Court of Bamberg, Bavaria in 1929. Torture followed. The physicians treated the victims filed criminal charges which were not processed. If these had been processed, the Second World War might have been prevented. The citizens of Coburg have continued to benefit from this seizure of power by the Nazis to this day.

57. The District Council Office of Coburg began the political prosecution of the plaintiff Mr. Beowulf von Prince in 2004, as evidenced by the trial on March 30, 2006. This is why the Bund für das Recht was founded: to point out the changed application of law and to demand German law.

58. In 2013, mass proceedings were held to condemn anyone with a Danzig identity card, all under obviously false charges. This was reported in the press. After a total of two years in prison, the plaintiff Mr. von Prince was tried for Danzig identity cards without any evidence. Press reports described the trial as most bizarre. Nevertheless, Mr. von Prince was released only a week later.

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

14

59. There is no resistance against the application of the National Socialist law of the German Reich. It is accepted that one is only being prosecuted for his nationality. Being a national of the Free City of Danzig is expressly being prosecuted as a criminal act. The goal is the absolute, total annihilation of this nationality, the same as that pursued at the beginning of the Second World War. It is being pursued in just as brutal a manner as with any other war.

60. Therefore, Art. 53 and 107 of the United Nations Charter concerning enemy states apply.

61. The "Germans," represented by the deputies of the FRG, are not demanding their rights under Art. 25 GG.

62. Under Art. 16 GG, a German may not be deprived of his nationality and must therefore be subject to German law under Art. 116 GG. However, this has been done publicly to the plaintiff Mr. von Prince.

63. This constitutes a violation of the obligations under Art. 25 GG by the "Germans."

64. Thus, the "Germans", represented by the deputies of the FRG, have again freely accepted the National Socialist law of the German Reich and thus this nationality. If they were sovereign, they would again be the enemies of the United States of America.

65. The Germans have abandoned Art. 116 GG and clarified their position.

66. They can sue one another.

67. London Dept Agreement of 1953

Australian Treaty Series 1954 No 17
DEPARTMENT OF EXTERNAL AFFAIRS, CANBERRA
Agreement on German External Debts
(London, 27 February 1953)
Entry into force generally: 16 September 1953

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

15

Entry into force for Australia: 29 September 1954
AUSTRALIAN TREATY SERIES
1954 No. 17
Australian Government Publishing Service, Canberra (c) Commonwealth of Australia 1997

A.  Letter to the Allied High Commission from the German Federal Chancellor

Bonn, 6 March 1951

Mr. High Commissioner

The general effect of this plan shall neither dislocate the German economy through undesirable effects on the internal financial situation nor unduly drain existing or potential German foreign-exchange resources. It shall also not add appreciably to the financial burden of any occupation Power.

The Governments concerned may obtain expert opinions on all questions arising out of the negotiations on the settlement plan and on the capacity to pay.

**The result of the negotiations shall be set forth in agreements. It is agreed that the plan will be provisional in nature and subject to revision as soon as Germany is reunited and a final peace settlement becomes possible.**

I beg your Excellency to accept the assurance of my highest esteem.
[Signed:]
ADENAUER

Article 5 **Claims excluded from the Agreement**

(2) Consideration of claims arising out of the second World War by countries which were at war with or were occupied by Germany during that war, and by nationals of such countries, against the Reich and agencies of the Reich, including costs of German occupation, credits acquired during occupation on clearing accounts and claims against the Reichskreditkassen **shall be deferred until the final settlement of the problem of reparation.**

68.  According to this agreement, reparations claims are postponed until Germany is reunited and a final peace settlement is possible.

69.  As long as the Basic Law for the Federal Republic of Germany promulgated on May 23, 1949 continues to apply to Germans within the meaning of Art. 116 GG, thus also for the nationals of the Free City of Danzig, which according to Art. 5 (2) is among the states entitled to reparations, a final peace settlement is not possible.

70.  What should a reunited "Germany" be called? The reunited German Reich? Or the reunification of the nationals of the German Reich or the reunification of the former nationals of the German Reich?

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

16

In any case, reunification means the abrogation of the Basic Law and the law defined therein and thus a distinction between the nationals of the Free City of Danzig and the Germans within the meaning of the Basic Law.

71. With the official non-application of Art. 101 GG, §16 GVG, and Art. 97 GG under violation of §92 StGB, the Basic Law and the laws defined therein will in any case no longer apply to those who accept it. They have reunited under another law.

72. On the other hand, those who rely on their being nationals of the Free City of Danzig have organized themselves politically and their representatives have been confirmed by the courts. This will finally allow reparations questions to be clarified.

73. This can be used to negotiate a peace treaty.

74. According to the London Debt Agreement of 1953, reparations are to be paid once the Germans are reunited. After the positions among the Germans within the meaning of Art. 116 GG have been clarified, the nationals of the German Reich are considered to have been reunited, thus making reparations due.

## 2. Concerning the Swiss Confederation

75. By refusing the right to be heard, the decision of the Swiss Federal Office of Justice approved the extradition of the plaintiff Mr. Beowulf von Prince only for the purpose of bringing him before the competent legal authority.

Evidence No. 9:    Extradition decision dated August 20, 2012,

Swiss case no. B 224'163/TMA

76. Contrary to these conditions, the conditions of the Federal Act on International Mutual Assistance in Criminal Matters (IMAC) and Art. 14 of the European Convention on Extradition (Rule of Speciality) were completely violated.

Evidence No.10:    Delivery of the indictment Case No. 1 KLs 123 Js 3979/11

to the prison on July 09, 2013

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

17

77. To remedy this breach, the Bavarian State Ministry of Justice requested extended extradition on December 23, 2013.

Evidence No. 13:    Extradition request, dated December 23, 2013

78. In its decision of March 10, 2014, the Swiss Federal Office of Justice rejected the entire extradition for political reasons.

Evidence No.14:    Refusal of the extradition on March 10, 2014,

Swiss Case No. B 224'163/TMA

79. The plaintiff Mrs. Karin Leffer was thereby forced to leave the FRG, her family, and her practice, since she had already been convicted more than 100 times as a fellow perpetrator and instigator of criminal activity in the convictions of the members in mass trials and therefore the verdict had already been fixed.

80. Nevertheless, on April 15, 2016, the Aargau Cantonal Police broke down the door to the apartment of the plaintiff Mr. Beowulf von Prince and he was extradited in handcuffs to Germany, in full knowledge that he would be illegally imprisoned there.

81. The violations against extradition law and the rules concerning the detention of the innocent between December 21, 2012 and October 18, 2013 and certainly the detention of the innocent between April 15, 2016 and April 13, 2017 have not been remedied. Thus, the National Socialist law of the German Reich continues to apply with respect to the plaintiff Mr. Beowulf von Prince and the plaintiff.

82. In addition, the plaintiffs are being prosecuted by the Canton of Aargau for allegedly staying in Switzerland illegally. However, the plaintiffs are only in Switzerland because Mr. von Prince was extradited to the "Germans" and the violations of the terms and conditions of this extradition have not remedied to this day.

83. Therefore, the Swiss Confederation is also in breach of international law.

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

## 3. The European Union

84. The European Union is aware that "Germany" has violated the terms and conditions of Mr. von Prince's extradition, thereby violating the Charter of Fundamental Rights of the EU. The EU knows that there are arrest warrants against the plaintiffs, which are based only on the breach of the terms and conditions of Mr. von Prince's extradition, and that they therefore cannot leave Switzerland into the EU because they would otherwise be extradited to "Germany" on the basis of an European arrest warrant.

    Evidence No.17 and 18:    Complaints to the European Court of Human Rights

    Evidence:    Petition to European Parliament

    Evidence No.16:    Complaints to the EU Commission

    Evidence:    Kingdom of Belgium (Recitals 86-90)

85. As a result, the EU Member States have also adopted the National Socialist law of the German Reich with regard to the plaintiffs and must therefore in this regard be included as co-defendants in this case.

## 4. Kingdom of Belgium

86. Plaintiff Mr. von Prince travelled to Belgium because he was being persecuted by Switzerland for allegedly residing there illegally. He intended to file a voluntary complaint there to end the illegal political persecution.

87. But before he had a chance to file these charges, he was arrested on July 17, 2019, Case No. 1 KLs 123 Js 4652/14 = 1 KLs 123 Js 3979/11.

    The German authorities indicated in the European arrest warrant submitted to the Belgian authorities that, if convicted, the charges of document forgery could result in up to 5 years' imprisonment.

    Concerning the new case number: In 2014, the Coburg Regional Court opened a new case file against Mr. von Prince. In 2017, the German public defender Mr. Voigt determined that the case file was missing the entirety of the extradition requests and

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

their rejections from 2011 and 2013. The court claims that these requests were not made and are now prosecuting the plaintiff Mr. von Prince under the new case number.

88. On August 28, 2019, the Eupen state prosecutor's office confirmed in writing that the extradition was postponed due to Mr. Beowulf von Prince's asylum application. As confirmed by his attorney Mr. Orban, an asylum application has a suspensive effect.

Evidence No. 20:    Letter from the Eupen state prosecutor's office

dated August 28, 2019

89. On September 4, 2019, a hearing for asylum was scheduled to take place at 10:00 a.m. On September 3, police from Coburg had already traveled in a civilian vehicle to the Belgian border for the handover of the plaintiff Mr. von Prince on the next day. It had already been arranged for the plaintiff to be extradited without a hearing for his claim of asylum. At 4:40 pm on September 3, 2019, the plaintiff Mr. von Prince was taken from his cell. Although the guards tried to prevent him from doing so, Mr. von Prince took the letter from the immigration office indicating his scheduled appointment. He was taken to to the prison warden's office, where he was informed that he was going to be extradited on the following day. Mr. von Prince presented the letter indicating the appointment for an asylum hearing, stating that he intended to attend said hearing and that his application for asylum constituted grounds for suspending the extradition order. His telephone card, which at the time still had approx. €50 in credit, was blocked immediately, preventing him from notifying anybody of the new situationy. His cellmate only had €3 in credit on his card, so Mr. von Prince was unable to notify his attorney. In the morning of September 4, 2019, his cellmate was first removed from the cell. The plaintiff refused to leave the cell to be extradited, stating that his scheduled asylum hearing had the effect of suspending any and all extradition proceedings. The plaintiff was left waiting. It was already 10:00 am when the guards returned, stating that he was free to leave the prison and attend his hearing. Mr. von Prince therefore reacted by packing up his things. Nevertheless, at the exit to the prison, he was handed over to Belgian police officers who

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

20

handed him to German police awaiting him at the border. His lawyer did not find out until the next day after Mr. von Prince had already been removed from the country.

Evidence:     Five emails with 62 attachments to the responsible immigration office on August 31 and September 2, 2019; telephone call at approx. 11:30 am on September 3, 2019 made by plaintiff Mrs. Leffer with the immigration office to find out that the responsible administrator had received the emails and that the hearing was scheduled for September 4, 2019.

Evidence:     Lawyer Orban, Eupen

90. Therefore, the Kingdom of Belgium has acted in violation of international law, which serves as further proof that the EU violates international law as described in recitals 84 and 85 and that the FRG has extended the application of National Socialist law to the EU member states.

91. The plaintiff Mr. von Prince was extradited from Belgium under the conditions of a possible five-year sentence as indicated in recital 87. The Regional Court of Coburg once again breached these terms of extradition by increasing the sentence to a possible ten years due to the severity of the alleged crime.

**D. Facts**

92. The father of the plaintiff Mr. Beowulf von Prince made use of the Law concerning the Renunciation of German Nationality imposed by the German Reich and could no more become a deputy of the FRG. The same is true for the plaintiff Mr. Beowulf von Prince.

Evidence No. 1:     Deed of Renunciation of the Government of Lower Franconia, Bavaria, FRG dated November 21, 1955

Evidence No.5:     Electoral laws of FRG

93. However, the plaintiff Mr. Beowulf von Prince was able to become a civil servant in possession of German nationality within the meaning of Art. 116 GG and swore under

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

21

oath to comply with the Basic Law and the law enshrined therein. He is therefore a representative of this law.

94. In 1980, he joined the Bavarian State Forestry Office, where he dealt with a snow breaking catastrophe and a bark beetle calamity right at the beginning. In this context, replacement measures were carried out for the first time in history, where he designed and enforced a new forestry concept. As deputy honorary managing director of the Waldbauernvereinigung, he received so many donations for this work that they would have been sufficient to pay him a salary. For this he has received the best evaluation of a probationary period of all time: "Has persuasive power, great assertiveness, likes to take on great responsibility, etc."

In 1986, he moved to the Forest and Domain Office in Coburg, where he immediately achieved the best operating results and delivered at least 3.5 times the normal performance on average per year.

All this without any financial or temporal compensation, but because he was committed to special loyalty to his employers, the Allies.

In 1994, Mr. Beowulf von Prince retired from active service.

95. But the employer must also show loyalty to its civil servants. The employer is obliged to pay the civil servant appropriately for his lifetime.

96. This obligation was violated. He was not awarded occupational disability and even the agreed pension has been continuously and unilaterally cut.

97. As late as 1999, the Bavarian Administrative Court in Bayreuth confirmed that the rights of the plaintiff Mr. von Prince were being unlawfully violated by the Free State of Bavaria, with damages of DM 1,200,000.00.

98. The political persecution of the plaintiff Mr. Beowulf von Prince began in 2004.

99. Criminal charges were filed by authorities that had and have nothing in common with the StGB. They were obviously applying §2 StGB as it existed under the National Socialist regime.

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

22

100. For this purpose, the legally competent judges per Art. 101 GG and §16 GVG were replaced by unlawful extraordinary judges.

101. The political persecution was and is led with the obvious intention of absolutely destroying the plaintiff. To this end, he has been deprived of any basis to make a living and has had his assets expropriated without compensation.

102. The plaintiff therefore set up the Bund für das Recht together with the plaintiff and other Germans within the meaning of Art. 116 GG in order to demand that German law be applied. The book "Do your duty: save your existence" was published with regard to the Potsdam Agreement.

103. After the promulgation of the 2nd Act to Adjust Federal Law of November 23, 2007, the plaintiffs and others reorganized the sovereign state of the Free City of Danzig and communicated this to the essential bodies on May 23, 2008.

104. The plaintiff Mr. von Prince then traveled to Switzerland on April 28, 2009. On Aug.11, 2011, the FRG requested his extradition to its territory.

105. By decision of the Swiss Federal Office of Justice, the extradition was only approved for trial, in conjunction with the arrest warrant of the Regional Court Coburg for the purpose of bringing him before the competent legal authority, Case No. 2 Ns 118 Js 181/08. "For the remaining grounds, extradition is refused," said the decision of August 20, 2012, Case No. B 224'163 / TMA, because Mr. von Prince's innocence was already state in the arrest warrant. On December 21, 2012, the plaintiff Mr. von Prince was arrested in his apartment and extradited to Germany on January 25, 2012 and later released from prison on October 18, 2013 with irreparable damage to his health.

Evidence No. 9:    Extradition decision dated August 20, 2012

106. The terms and conditions of the extradition decision were completely violated. The basic principle of any extradition (extradited only for the specific case) was violated by unauthorized prosecution measures against the reorganization of the Free State of the Free City of Danzig. In addition, more than 100 people who had requested a Danzig

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

23

identity card were charged as co-conspirators and instigators of the criminal sense in the insane (in the medical sense) claim that the Danzig identity card was the falsification of a German ID card. The plaintiffs were charged as the perpetrators without any further hearing, cf. the indictment for Case No. 1 KLs 123 Js 3979/11. It refers to the plaintiffs as representatives of the Free State of the Free City of Danzig. On the basis of this indictment, arrest warrants were issued against Mr. von Prince on September 19, 2013 and against Mrs. Leffer on September 15, 2014, wherein, once again, the plaintiffs are designated as representatives of the Free State of the Free City of Danzig and thus legally confirmed as such.

Evidence No.7:    German and Danzig identity cards in comparison

Evidence:    Indictment 1 KLs 123 Js 3979/11

Evidence No.12:    Arrest warrant 1 KLs 123 Js 3979/11 against Mr. von Prince

Evidence No.15:    Arrest warrant 1 KLs 123 Js 3979/11 against Mrs. Leffer

107. Even when he offered bail of €1,344,000/day, Mr. von Prince was not released from custody.

Evidence No.11:    Regional Court Coburg, Decision dated September 18, 2013

108. In order to remedy the breach of terms and conditions, the Bavarian State Ministry of Justice requested extended extradition on December 23, 2013, specifically under the same case number, B 224'163 / TMA.

109. In its decision of March 10, 2014, the Swiss Federal Office of Justice rejected all extradition on grounds of political persecution.

Evidence No.14:    Refusal of extradition dated March 10, 2014

110. The plaintiff Mrs. Leffer was thereby forced to leave the FRG, her family, and her practice, since she had already been convicted more than 100 times as a co-conspirator and instigator of criminal activity in the convictions of the members in mass trials and therefore the verdict had already been fixed.

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

24

111. On April 15, 2016, the Aargau Cantonal Police broke down the door to the apartment of Mr. Beowulf von Prince and handed him over to the waiting German police.

112. As early as 2013, the Prosecutor General of the Higher Regional Court of Bamberg had been appointed Higher Regional Court President Bamberg and thus fulfilled the offense of constitutional treason under §92 StGB.

113. Meanwhile, Leading Senior Public Prosecutor Lohneis of the Regional Court of Coburg, which was responsible for the violation of the extradition decisions and thus against the ECE and thus against international law, was appointed to the Regional Court President of the Regional Court of Coburg and thus he is the disciplinary superior of the judges and thus met again the offense of constitutional treason.

Evidence No.8:       Official website of the Bavarian State Ministry for Justice

114. Mr. Beowulf von Prince was in prison and was not provided with proper or adequate medical treatment. He was expressly detained, according to the Freiburg Court with jurisdiction over the execution of sentences (*Strafvollstreckungskammer*), Case No. 12 StVK 381/16: "Because he believes he is a national of the Free City of Danzig." Mr. von Prince's answer: "If I were not the son of a survivor of World War II's first and most severe crimes, but the son a Nazi asshole like Heinrich Himmler from Munich, I would not be in jail."

115. Plaintiff Mr. Beowulf von Prince was thus expressly held in jail on grounds of his nationality, officially because of the proceedings under 1 KLs 123 Js 3979/11. Mr. von Prince has rejected the judges for bias, because this case is a purely Swiss case and the case was condemned as political prosecution by the competent authority and thus a void administrative act. Meanwhile, Mr. von Prince was already largely weakened. He would have survived only a few weeks.

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

25

116. Therefore, Mr. von Prince's lawyer proposed a binding agreement whereby Mr. von Prince would be released on the day of his trial. For this he would have had to withdraw his claims of bias, not consult any further attorneys, and confess without knowing what he was confessing to. To force this, Mr. von Prince was denied access to the prison doctor.

117. A negotiation took place on April 7, 2017. The prosecutor withdrew from the binding agreement which would have allowed a trial to take place. Negotiations still took place. No proof of guilt could be provided. Nevertheless, Mr. von Prince was only released on April 13, 2017 on leave by the Chief Judge Franke.

118. Nevertheless, another arrest warrant has been issued against the plaintiff Mr. von Prince in the proceedings for 1 KLs 123 Js 3979/11, although Mr. von Prince's attorney, Mr. Joachim Voigt, cannot ascertain who is accusing Mr. von Prince of what.

119. Meanwhile, the plaintiff Mr. von Prince is prosecuted by the Canton of Aargau for alleged forgery of a Danzig ID card and allegedly staying illegally in Switzerland.

120. While the proceedings in the District Court of Rheinfelden are still ongoing, Mr. von Prince has been twice convicted of the same act without having been served any notice of the other proceedings. On April 20, 2018, he is arrested during a vehicle inspection and was released only after paying more than CHF 2,600.00.

121. The files of the Office for Migration already contain these convictions, although the first one is not yet final. It was obviously planned to arrest Mr. von Prince for failure to pay the fine of CHF 2,600.00 and return him to "Germany."

122. But Mr. von Prince has filed for asylum and this process is still ongoing. Nevertheless, it can be denied at any time and Mr. von Prince can be arrested and extradited at any time.

26

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

123. The EU Commission and the EU Parliament have been informed and are doing nothing (see Recital No. 84).

124. Likewise, the European Court of Human Rights in Strasbourg is aware that Mr. von Prince and the plaintiff cannot seek legal redress in "Germany" without fundamentally violating the European Convention on Human Rights.

Evidence No 17:    Complaint filed with the ECHR in Strasbourg by Mr. von Prince

Evidence No.18:    Complaint filed with the ECHR in Strasbourg by the plaintiff

125. Now Belgium has also extradited Mr. von Prince even though his life is in danger. He has already been denied a much-needed visit to the prison doctor in order to extort a false confession from (cf. Recitals 86-90)

## CAUSE OF ACTION

126. For declaratory relief that the place of jurisdiction is in the United States of America, with President Donald Trump as commander-in-chief and thus as the final instance in the proceedings referred to above, the following requests for evidence are therefore made:

127. The Second World War began with the bombardment of the territory of the Free State of the Free City of Danzig.

Evidence:        Annual celebrations commemorating the beginning of the Second World War

128. With the beginning of the Second World War, Hague IV came into force and remains applicable until the conclusion of a peace treaty.

Evidence:        Hague IV

129. There is to date no peace treaty.

Evidence:        Art. 79 of the Basic Law for the Federal Republic of Germany (see Recitals 14-16)

Evidence:        The London Debt Agreement of 1953 - Commitment to Reparations after Reunification of the Nationals of the German Reich

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

27

(see Recital 67)

Evidence:   e.g. the expert opinion of the Republic of Poland from Aug./Sept. 2017 concerning the entitlement to reparation claims

Evidence:   Reparation claims from Greece

Evidence No. 19:   Letter to the International Court of Justice in The Hague

Evidence:   The United States of America.

130. The US is the main victorious power of World War II

Evidence:   Confirmation 1944 in London

131. If a state is occupied, the obligation to comply with the international treaties of the occupied state passes to the occupier.

Evidence:   Hague Conventions

132. The Constitution of the Free City of Danzig is an international treaty.

Evidence:   Art. 101, 102 and Art. 103 of the Treaty of Versailles.

Evidence:   Judgment of the Permanent International Court of Justice in The Hague, Series A / B No. 65 https://www.icj-cij.org/en/pcij-series-ab

133. The Treaty of Versailles grants the nationals of the Free City of Danzig military protection and the guarantee of ordre public under Art. 43 Hague IV in the event of war.

Evidence:   ibid. Hague IV, the Treaty of Versailles

134. In case of doubt, the United States of America as the main victorious power is responsible for the observance of the Peace Treaty of Versailles towards the nationals of the Free City of Danzig.

Evidence:   as before

135. The German Reich did not surrender at the gates of the capital Berlin, but fought a house-to-house-combat in Berlin and thus declared the capital to a fortress. With this, the German Reich has perished under international law.

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

28

Evidence:            Hague IV

136. Reparations payments of the German Reich have not yet been made.

Evidence:            London Debt Agreement of 1953 regulating the debts of the

German Reich before the Second World War. The Federal Republic

of Germany as manager of the assets of the German Reich was

paying off this debt until 2010.

137. According to the London Debt Agreement, the debts that originate from the Second

World War are due when the nationals of the German Reich have reunited.

For the reunification of the nationals of the German Reich a changed application of the

Basic Law and the law defined therein must be made.

Evidence:            Art. 79 GG

Evidence:            Art. 116 GG

Evidence:            Distinction among Germans within the meaning of Art.116.

138. The plaintiff Mr. Beowulf von Prince is entitled to damages.

Evidence:            Above-average performance as a civil servant

Evidence:            Unilateral reduction of the pension

Evidence:            No compensation to date for unlawful infringement of rights

Evidence:            Illegal withdrawal of livelihoods

Evidence:            Expropriation of real estate without compensation

Evidence:            Violation of the ECE - illegal deprivation of liberty

Evidence:            Damage to health

Evidence:            Violation of the Torture Act.

139. The plaintiff Mr. Beowulf von Prince is entitled to reparation

Evidence No. 2 and 3: Father's claims for damages with the United Nations

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

29

https://digitallibrary.un.org/search?ln=en&p=

Tom+Adalbert+von+Prince&f=&c=Resource+Type&c=UN+Bodies

&sf=&so=d&rg=50&fti=0

Evidence:     Partial payment of approx. 275,000.00 shillings

Evidence:     Art 5.2 London Debt Agreement (Recital No. 67)

Evidence:     Participation in state assets, including 11.7 tons of gold in the state

treasury

140. The plaintiff is entitled to damages.

She has become active as a German within the meaning of Art. 116 GG and has fulfilled her direct duty per Art. 25 and has consistently demanded compliance with German = Danzig law, e.g. also with the publication of the book "Do your duty". She is therefore persecuted, has had her reputation and health damaged, has had to leave her husband and family, and give up her job and flee the country.

Evidence No 15:    Indictment and arrest warrant Case No. 1 KLs 123 Js 3979/11

Evidence No.18:    Complaint to the ECHR in Strasbourg

141. The Germans represented by the deputies of the FRG are obliged to pay reparations.

Evidence:     Aversion from the Basic Law

Evidence:     as before

Evidence:     Expert opinion of the Republic of Poland

142. The EU is not fulfilling its obligations to the nationals of the Free City of Danzig.

Evidence:     Enforcement of a European arrest warrant resulting only from a breach of the ECE despite numerous acquittals and no information concerning the source of the allegations.

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

30

Evidence:    Enforcement of a European arrest warrant against the representatives of the Free City of Danzig and thus political persecution only on the basis of nationality.

143. Although the competent Swiss federal authorities condemn the violation of the ECE and the Agreement on the Free Movement of Persons, the plaintiffs will continue to be prosecuted by the Canton of Aargau in breach of these international treaties.

Evidence:    Office for Migration, Canton OF Aargau

144. The SS was an independent party to the war within the meaning of section 1 Hague IV.

Evidence:    Own uniform

Evidence:    Own grade names

145. While the German Wehrmacht was a force of the German Reich, which belonged only to nationals of the German Reich, the SS is an international force that has not capitulated.

Evidence:    Composition of the SS from different nationalities

Evidence:    No surrender of the SS

Evidence:    Continuation, inter alia as HIAG and ODESSA (organization of SS members)

146. Thus, there has been no complete capitulation of the armed forces on the part of the German Reich and the second section of Hague IV continues to apply.

Evidence:    Hague IV

147. Thus, the supreme military command is the supreme law.

Evidence:    Hague IV

148. Thus, the highest judge is the commander-in-chief of the main victorious power, the United States of America. The supreme judge in this matter is therefore the President of the United States of America, Donald J. Trump.

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

Evidence:        as before

Evidence:        Confirmation of the USA as primary victor in London in 1944

149. The Free City of Danzig does not fall under section 2 Hague IV, but under section 3.

Evidence:        Art. 100-103 of the Peace Treaty of Versailles

150. For compliance with the international treaties towards the nationals of the Free City of Danzig, until the conclusion of a peace treaty, the main victorious power, the United States of America, is responsible.

Evidence: Hague IV

Evidence: as before

151. The plaintiff Mr. Beowulf von Prince is a national of the Free City of Danzig.

Evidence No.1:        Renunciation of the nationality of the German Reich by Mr. Tom Adalbert von Prince

Evidence No.2 and 3: Claims of Mr. Tom Adalbert von Prince due to war-related losses.

Evidence:        Files of the United Nations, T/PET.2/199/ und T/PET.2/200

                 https://digitallibrary.un.org/record/1656856?ln=en

Evidence:        Partial compensation of approx. 275,000.00 shillings

Evidence No.4:   Nationality Act of the Free City of Danzig

Evidence No.6:   German passport not proof of nationality

152. The Free City of Danzig is one of the Allies of the Second World War

Evidence:        Articles 100 - 103 of the Peace Treaty of Versailles

153. The Free City of Danzig and its nationals are entitled to reparation.

Evidence:        as before

Evidence:        Article 5.2 of the London Debt Agreement (see Recital Nos. 67)

Evidence:        Expert opinion of the Republic of Poland on the right to reparation

32

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

154. The plaintiff Mr. Beowulf von Prince defended the Basic Law of the Federal Republic of Germany and thus also international law and the European legal system by losing everything that he wanted to achieve in life and has achieved: family, property (including a house with 4 condominiums, elaborately built with 13 corners, 49 cm thick poroton stones, about 7,000 m² in building sites, farms operated by 2 limited liability companies in Poland, a management consultancy, etc.), his freedom, health, and almost his life. He has taken an oath to the Basic Law and thus to international law (Art. 25 GG). He is thus the official in charge of the occupation law and as a national of the Free City of Danzig first instance in the assessment of German law, according to Art. 116 of the Danzig Constitution and Art. 116 GG.

Evidence No. 16:    Complaint to the European Commission

Evidence No. 17:    Complaint to European Court of Human Rights in Strasbourg

Evidence:           Services as a civil servant

Evidence:           All necessary documents, such as: e.g. notarial contracts

155. The plaintiff Mr. Beowulf von Prince is acting as a civilian representative of the Allies and the chief victor, the United States of America.

Evidence:           as before

WHEREFORE, the plaintiffs Mr. Beowulf von Prince and Mrs. Karin Leffer, prays for the following relief:

a. For a declaration that the place of jurisdiction for the aforementioned action against the Federal Republic of Germany, the Swiss Confederation, the European Union and the Kingdom of Belgium is in the United States of America.

b. For a declaration that the defendants are obligated to reimburse Mrs. Karin Leffer for any and all sums she paid in connection with the underlying action, along with any and all defense costs, attorney's fees or related costs.

c. For such other relief as is just and equitable.

33

Dated: *Tuesday, October 15. 2019*

I hereby certify that this is the true signature and signed and solemnly affirmed in my presence of Leffer, Karin Doris, born on 18 January of 1960 in Coburg, citizen of Germany, residing in c/o Dietmar Morscher, Rheinecker Str. 8, 9425 Thal, Canton St. Gallen, Switzerland and identified herself by presentation of her valid Passport-No. CGO7MNRCH

Place: **9425 Thal, CH**   Date: **Tuesday, October 15, 2019**

Signature of public notary

M. A. HSG in Law Ilona Zürcher

KARIN LEFFER
c/o Dietmar Morscher
Rheinecker Str. 8
CH-9425 Thal
Schweiz

I hereby certify that this is the true signature and signed and solemnly affirmed in my presence of von Prince, Beowulf Adalbert, born on 27 Dezember of 1953 in Ebern, citizen of Germany, residing in Äusseres Holz 479, 9427 Wolfhalden, Canton Appenzell Ausserrhoden, Switzerland and identified himself by presentation of his valid Passport-No. C4YLG1ROW

Place: **9425 Thal CH**   Date: **Tuesday, October 15, 2019**

Signature of public notary

M. A. HSG in Law Ilona Zürcher

BEOWULF VON PRINCE
Äusseres Holz 479
CH-9427 Wolfhalden
Schweiz

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

Annexes

1 Renouncement of German Reich nationality
2 Documents of claims for damages from the Second World War
3 Documents from the digital archive of the United Nations
4 Nationality Law of the Free City of Danzig
5 Electoral laws
6 German passport no proof of nationality
7 Comparison of German passport to Danzig passport
8 Printout of the official website of the Bavarian Ministry of Justice - Repeal of the independence of the judiciary

9 Extradition decision, 1st and last page of the Swiss Federal Office of Justice, August 20, 201216

10 Delivery of the indictment file number 1 KLs 123 Js 3979/11 in the prison July 9, 2013

11 Judgment of the Regional Court of Coburg dated Sept. 18, 2013 ordering continued detention, despite offer to pay bail of €1,344.00/day.

12 Arrest warrant of September 19, 2013 – Beowulf von Prince representative of the Free State of Danzig

13 Extradition request, dated December 23, 2013

14 Refusal of Extradition of March 10, 2014

15 Arrest warrant dated September 15, 2014 - Karin Leffer representative of the Free State Danzig

16 Complaints at the European Commission

17 Complaint at the European Court of Human Rights in Strasbourg, Beowulf von Prince

18 Complaint at the European Court of Human Rights in Strasbourg, Karin Leffer

19 Letter to the International Court of Justice in The Hague of December 27, 2017

20 Letter from the Eupen Public Prosecutor's Office dated August 28, 2019

21 Complaint returned by the Supreme Court of the United States on August 6, 2018, received August 30, 2019

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

We open up language to everyone



translated.

Certification of Translation Accuracy

14/10/2019                    Project N°: **25704715**

Translated document:        Language Combination:
**Complaints**                **German to English**

We, Translated s.r.l., a professional translation company, hereby certify that the above mentioned document(s) has/have been translated by experienced and qualified professional translators to the best of their ability.

This certificate relates to the accuracy of the translation only and not to the original content of the document. In accordance with our general terms and conditions, Translated s.r.l. is not liable and shall not be held liable for the consequences of any use of the translation by the customer or any other party.

A copy of the translation is attached to this certification.

Translated S.r.l.
Via Indonesia n.23
00144 Roma (RM)
P.IVA 07173521001

Co-founder & Chairman
TRANSLATED SRL

TRANSLATED S.R.L.           Via Indonesia 23            E-MAIL info@translated.com
VAT. IT 071 73 52 10 01     00144 Rome (RM)             TEL. +39 06 90 254 001
R.E.A. Roma 1015467         Italy                       WEB. translated.com

  

Nov. 22, 2019

List of previous costs of the complaint for the recovery of the defendants:

| | |
|---|---|
| Bill paper letter size | CHF 60,90 |
| Translation 1 | CHF 197,20 |
| Translation 2+3 | CHF 674,30 |
| Print cartridge | CHF 44,- |
| Notary | CHF 80,- |
| Post fees | CHF 214,- |

| | |
|---|---|
| CHF 1.270,40 = | USD 1.277,76 |
| Return post fees | USD 65,30 |
| Court fees | USD 400,- |

| | |
|---|---|
| Summary: | USD 1.743,06 |

====================================

Translation:
Auflistung der bisherigen Kosten der Klage für die Rückforderung von den Beklagten:

| | | |
|---|---|---|
| Rechnung Papier in Letter Format | CHF | 60,90 |
| Übersetzung 1 | CHF | 197,20 |
| Übersetzung 2+3 | CHF | 674,30 |
| Druckerpatrone | CHF | 44,- |
| Notarkosten | CHF | 80,- |
| Postgebühren | CHF | 214,- |

| | | |
|---|---|---|
| CHF 1.270,40 | USD | 1.277,76 |
| Rücksendung Postgebühren | USD | 65,30 |
| Gerichtskosten | USD | 400,- |

| | | |
|---|---|---|
| Gesamt: | USD | 1.743,06 |

====================================